UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
MARC JASKIEWICZ,

                Plaintiff,

  -v-                                     3:08-CV-379

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| HINMAN, HOWARD & KATTELL, LLP<br>Attorneys for Plaintiff<br>P.O. Box 5250<br>80 Exchange Street<br>700 Security Mutual Building<br>Binghamton, NY 13902-5250 | EUGENE D. FAUGHNAN, ESQ. |
| OFFICE OF REGIONAL GENERAL COUNSEL<br>SOCIAL SECURITY ADMIN. REGION II<br>Attorneys for Defendant<br>26 Federal Plaza Room 3904<br>New York, NY 10278 | ARTHUR SWERDLOFF, ESQ.<br>KRISTINA D. COHN, ESQ. |

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

### I. INTRODUCTION

       This matter is brought pursuant to § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review a final determination of the Commissioner of Social Security denying the plaintiff's claim for Social Security Disability benefits.  The parties have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.

## II. **BACKGROUND**

Plaintiff Marc Jaskiewicz ("plaintiff" or "Jaskiewicz") filed an application for Social Security Disability benefits on November 26, 2003, claiming a period of disability beginning on December 31, 1997. His claim was denied on March 9, 2004.

Plaintiff filed a second application for disability benefits on June 29, 2004. That application was denied on November 17, 2004. He filed a request for a hearing on December 3, 2004. At the initial hearing on April 14, 2005, the Administrative Law Judge ("ALJ") deemed the claim abandoned when the plaintiff failed to appear.

A second hearing was held on July 14, 2005. The ALJ rendered a decision on September 22, 2005, denying plaintiff's claim. Plaintiff appealed the ALJ's decision to the Appeals Council. On March 6, 2006, the Appeals Council issued an order remanding to the ALJ for further evaluation of plaintiff's mental impairments; for consideration of plaintiff's maximum Residual Functional Capacity ("RFC"), particularly regarding his drug and alcohol abuse; to obtain evidence from a vocational expert clarifying the effect on plaintiff's occupational base; and, if Jaskiewicz was found disabled, to determine whether drug addiction and alcoholism are contributing factors material to that finding.

A third hearing was held on July 19, 2007. In a decision issued on October 26, 2007, the ALJ again found plaintiff "not disabled." Plaintiff again appealed. The Appeals Council declined further review of the ALJ's decision. Thus, the ALJ's decision became the final decision of the Commissioner. Plaintiff filed the instant complaint in the district court on April 8, 2008.

## III. DISCUSSION

### A. Standard of Review

The scope of a court's review of the Commissioner's final decision is limited to determinating whether the decision is supported by substantial evidence and the correct legal standards were applied.  Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam) (citing Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002); Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)). "Substantial evidence means 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Poupore, 566 F.3d at 305 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S. Ct. 456, 464 (1951)).  If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive.  Id.

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone, 70 F. Supp. 2d at 148 (citing Johnson, 817 F.2d at 986).

A reviewing court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a

rehearing." 42 U.S.C. § 405(g); see Martone, 70 F. Supp. 2d at 148.  "Remand is appropriate where there are gaps in the record or further development of the evidence is needed," such as where new, material evidence has become available.  42 U.S.C. § 405(g); Martone, 70 F. Supp. 2d at 148 (citing Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand for rehearing directing the taking of additional evidence is warranted only if it is shown that there is new, material evidence "and that there is good cause for the failure to incorporate such evidence into the record" at the administrative hearing.  Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643–44 (2d Cir. 1983) (quoting 42 U.S.C. § 405(g), as amended in 1980).  Remand may also be appropriate if the Commissioner "misapplies the law or failed to provide a fair hearing."  Id. at 644.  However, where the underlying administrative decision is not supported by substantial evidence, reversal is appropriate because there would be no useful purpose in remanding the matter for further proceedings.  Id. (reversing and remanding solely for calculation of benefits, subject to determination by the district court of any motion by the agency to remand to consider new evidence); Parker, 626 F.2d at 235 (reversing and remanding solely for calculation and payment of benefits); Simmons v. United States R.R. Ret. Bd., 982 F.2d 49, 57 (2d Cir. 1992) (same); Williams, 859 F.2d at 261 (same).

### B.  Disability Determination—The Five-Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The ALJ must follow a five-step evaluative process in determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. In the first step, the ALJ must determine whether the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity he is not disabled, and he is not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments that significantly restricts his physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a severe impairment, then step three requires that the ALJ determine whether the impairment meets or equals an impairment listed in Appendix 1 of the regulations. Id. §§ 404.1520(d), 416.920(d); see also id. Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether the claimant's RFC precludes the performance of his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). When determining the appropriate RFC, if the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record" it is given significant weight. Poupore, 566 F.3d at 307 (quoting 20 C.F.R. § 404.1527(d)(2)). However, where the treating physician's opinion is not supported by medical evidence, it is not entitled to significant weight. Id. The ALJ should consider the following six factors, none of which are dispositive, when determining what weight to accord treating, consulting, and non-examining sources: (1) the examining relationship; (2) the length and nature of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(d).

      The burden of proof with regard to the first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Ferraris, 728 F.2d at 584.

      If it is determined that the claimant cannot perform past relevant work, the burden shifts to the agency for the fifth and final step. Perez, 77 F.3d at 46. This step requires the agency to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that "factors such as a claimant's age, education, and previous work experience" should be evaluated to determine "whether a claimant has the residual functional capacity to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary." Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404.1567(a)). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306.

      A claimant may seek review of an adverse decision by the ALJ from the Appeals Council. Perez, 77 F.3d at 44. If review is granted, the decision of the Appeals Council is

- 6 -

the final decision of the Commissioner. Id. If review is denied, then the final decision is that of the ALJ. Id. The final decision is judicially reviewable pursuant to 42 U.S.C. § 405(g).

### C. Analysis

The ALJ first determined that plaintiff had not engaged in substantial gainful activity since March 12, 2004. The ALJ next found that plaintiff's seizure disorder and inflammatory arthropathy were severe impairments that did not meet or equal those listed in the regulations. Subsequently, the ALJ determined that Jaskiewicz had the RFC to lift ten pounds frequently and 20 pounds occasionally, to stand/walk for two hours and sit for six hours in an eight-hour workday, to learn and perform simple tasks, relate adequately to others, and work in a low-stress environment. Further, the ALJ noted that plaintiff could not work with ladders, ropes, or scaffolds, and should avoid working near fumes, odors, dusts, gases, heights, and moving machinery. Based on this RFC, it was found that plaintiff could not perform his past relevant work as a short-order cook. Therefore, the process reached step five, at which the ALJ concluded that there were significant numbers of sedentary, unskilled jobs in the national economy that plaintiff could perform. Accordingly, the ALJ found that Jaskiewicz was not disabled.

Plaintiff argues that the ALJ improperly discounted the opinion of a treating physician, the ALJ's conclusion regarding the RFC was inconsistent with the medical evidence, and the Commissioner failed to sustain his burden as to step five of the process.

### 1. Weight of the Treating Physician's Testimony

Plaintiff asserts that the opinion and RFC put forth by Dr. Apacible should have been controlling as it was the only assessment from a medical doctor who had consistent interaction with him. Dr. Apacible concluded that plaintiff's ability to follow work rules; relate

to co-workers; deal with work stresses; maintain attention/concentration; understand, remember, and carry out detailed job instructions; behave in an emotionally stable manner; and relate productably in social situations was "seriously limited." R. 334–36.

The record indicates that the ALJ considered Dr. Apacible's opinion and afforded it little weight because it was inconsistent with other substantial evidence. See id. at 28 ("As to the claimant's mental functioning, I note that, except for Dr. Apacible's opinion, the other opinions and assessments of record would not preclude the claimant from the mental demands of work."). Instead, the ALJ referred to the reports of Drs. Barry, Moore, Russell, and Datta, who consistently indicated that Jaskiewicz had the ability to withstand the demands of work. Id. at 27–28. Further, the ALJ pointed out that Dr. Apacible's opinion was "expressly based on the claimant's own self-serving subjective statements." Id. However, a review of the record reveals other statements made by plaintiff that counter the findings of Dr. Apacible. For example, Jaskiewicz advised that he likes to cook and go fishing with friends, is able to take care of his hygiene and grooming, perform household chores, run errands, and utilize public transportation. Id. at 327, 332, 456, 458. Plaintiff also claimed that when he worked as a cook he was able to work "off of a menu" and adapted when the ordering system was computerized. Id. at 340. In terms of his mental health, Jaskiewicz testified at the hearing that he no longer engaged in or needed counseling. Id. at 453.

The ALJ also noted that two of Jaskiewicz's treating physicians, Drs. Dura and Robillard, provided conflicting opinions regarding his functioning. Id. at 27. While Dr. Dura opined that plaintiff cannot work full-time, Dr. Robillard indicated that he has no "exertional limitations." Id. The ALJ gave more weight to the latter assessment as it was supported by

the findings of Dr. Datta and the agency program physician, and because Dr. Robillard had treated plaintiff for a longer period of time. Id.

This record provides a sufficient basis for the ALJ's decision not to accord controlling weight to Dr. Apacible's opinion concerning Jaskiewicz's functionality.

### 2. Residual Functional Capacity Determination

In light of the above discussion, plaintiff's contention that the ALJ ignored the evidence in the record and "formed his own medical opinion" is without merit. To support this claim, Jaskiewicz again relies on Dr. Apacible's findings. However, it has already been established that the ALJ was justified in according this opinion little weight as it was inconsistent with other substantial evidence in the record. Moreover, the ALJ's written decision shows that he did not simply ignore Dr. Apacible's opinion, he instead relied on the reports of Drs. Barry, Moore, Russell, Datta, and Robillard—all of which claimed Jaskiewicz's abilities were not as limited as Dr. Apacible found them to be. Id. at 26–28.

In February 2004 Dr. Datta opined that plaintiff had no limitations with his speech, vision, hearing, sitting, standing, or walking. Id. at 256. Similarly, no limitations were noted on Jaskiewicz's use of his upper extremities for fine and gross motor activities. Id. This report noted that plaintiff should avoid climbing, lifting, carrying, and working at heights or around open machinery due to his seizure condition. Id. Also in February 2004, Dr. Barry found that although Jaskiewicz's general cognitive functioning and reasoning abilities were below average he could follow and understand simple instructions, maintain his attention and concentration, and learn new tasks. Id. at 251–52. Dr. Barry noted that plaintiff did not "evidence any severe cognitive deficits or organic learning problems" at that time.

In August 2004 Dr. Moore conducted a consultive psychiatric evaluation and concluded that plaintiff could follow simple directions, perform simple tasks, and relate adequately to others.  Id. at 272.  Dr. Moore noted that Jaskiewicz may have difficulty performing complex tasks, dealing with stress, maintaining a regular schedule, and controlling his occasional aggression and impulsivity.  Id.

Dr. Robillard's March 2005 assessment indicated that Jaskiewicz had no limitations on his ability to lift, carry, stand, sit, walk, push, pull, reach, handle, finger, feel, see, hear, or speak.  Id. at 308–10.  The only limitations noted were in plaintiff's ability to climb and balance on ramps, stairs, ladders, ropes, and scaffolds due to his risk of falling and in his ability to work around hazards, machinery, fumes, odors, chemicals, and gases.  Id. at 309, 311.  In April 2005 Dr. Russell performed a psychological evaluation and concluded that only Jaskiewicz's seizure condition interfered with his ability to secure employment.  Id. at 343.  Additionally, Dr. Russell opined that plaintiff's low intellectual functioning and poor achievement would interfere only with his ability to perform more challenging vocations than those he had previously engaged in.  Id.

Finally, the ALJ pointed out numerous admissions and assertions by plaintiff himself that conflicted with Dr. Apacible's conclusion.  See id. at 25–26 (noting that Jaskiewicz acknowledged that he can lift and carry 15 pounds, stand 4–5 hours, walk several miles in a day, and sit for 6–7 hours).

The medical evidence and plaintiff's own testimony thus support the ALJ's RFC determination.  Accordingly, Jaskiewicz's contention that the ALJ created his own medical opinion inconsistent with the record is rejected.

### 3. The Commissioner's Step Five Burden

Plaintiff is correct that the ALJ relied heavily on the vocational expert's testimony at the hearing. This was due to the ALJ's determination that Jaskiewicz did not have the RFC to perform the "full range" of light work. The ALJ turned to the vocational expert to help determine the extent to which plaintiff's particular limitations impeded his ability to perform any job that existed in the national economy. In response to the ALJ's hypotheticals—which incorporated plaintiff's age, education, work experience, and RFC—the vocational expert concluded that plaintiff could perform sedentary, unskilled work as a charge account clerk, surveillance system monitor, and an order clerk. Id. at 29.

Plaintiff maintains that the ALJ's reliance on the testimony of the vocational expert was improper because the hypotheticals to which the expert responded did not accurately and completely portray Jaskiewicz's impairments. Implicit in this argument is, once again, the assertion that the RFC was improperly determined.[1] Indeed, plaintiff points out that when the expert was presented with a hypothetical tailored to Dr. Apacible's RFC findings, he claimed there were no jobs that such a person could perform. This argument is without merit for the same reasons outlined in the preceding sections—Dr. Apacible's opinion was not controlling, and the ALJ was justified in not according it significant weight.

Because it has already been determined that substantial evidence in the record supported the RFC assessment, Jaskiewicz's vocational expert challenge is rejected. See Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 114 (2d Cir. 2010) (summary order) ("Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ

---

[1] Plaintiff fails to identify exactly which impairments or characteristics the ALJ failed to adequately describe in the hypotheticals and only specifically mentions the RFC determination as a whole.

did not err in posing a hypothetical question to the vocational expert that was based on that assessment."); Dumas v. Schweiker, 712 F.2d 1545, 1554 (2d Cir. 1983) (approving reliance on vocational expert's testimony where substantial evidence supported the RFC determination used in the hypotheticals posed to the expert).

## IV. CONCLUSION

The ALJ was justified in not according controlling weight to Dr. Apacible's RFC opinion in light of its inconsistency with other substantial evidence in the record. Additionally, the ALJ applied the appropriate legal standards and properly relied on substantial evidence when determining the RFC, which was appropriately included in hypotheticals posed to the vocational expert.

Accordingly, it is

ORDERED that

1. The Commissioner's motion for judgment on the pleadings is GRANTED;

2. The Commissioner's decision denying plaintiff disability benefits is AFFIRMED; and

3. The complaint is DISMISSED in its entirety.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated: December 10, 2010
       Utica, New York.